IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICK SAUTTER,

                      Plaintiff,

  v.                                                              OPINION and ORDER

BOARD OF REGENTS OF THE UNIVERSITY OF          24-cv-585-jdp
WISCONSIN SYSTEM,

                      Defendant.

---

Plaintiff Rick Sautter worked as a custodian for defendant Board of Regents of the University of Wisconsin System at the University of Wisconsin-Platteville. In 2022, he sought accommodations for bone spurs that limited his ability to walk and stand. Sautter contends that the university refused to provide him with reasonable accommodations, terminated him because of his disability, and then retaliated against him by placing unreasonable restrictions on him after rehiring him, in violation of the Rehabilitation Act.

The university moves for summary judgment on all of Sautter's claims, Dkt. 24, and the court will grant the motion. As for Sautter's claims that the university failed to accommodate him and then terminated him, the key problem is that Sautter has not submitted evidence showing that he could still perform his job, even with a reasonable accommodation. Sautter says that he could not walk more than 7,000 steps a day, and he identifies no way that he could perform the job of a custodian with that type of limitation. An employer's duty under the Rehabilitation Act is not unlimited, so Sautter's failure to identify a reasonable accommodation is fatal to his claims.

It is true that the university re-hired Sautter for several months in 2023 until he reached retirement, and the university agreed to provide additional accommodations for him during

that time. But that was only by creating a unique, light-duty position for Sautter: he was required to clean one part of one building while the other custodians were working together to clean multiple buildings across campus. Even with those limitations, co-workers were required to help Sautter when he could not complete his assigned tasks. Those accommodations went beyond what federal law requires, so they are not evidence that Sautter was entitled to a similar accommodation all along.

Sautter's retaliation claim fails for a different reason: Sautter has not supported his claim with specific facts, as required to defeat a motion for summary judgment. So the university is entitled to summary judgment on all of Sautter's claims.

UNDISPUTED FACTS

The following facts are undisputed, unless otherwise noted.

Sautter worked as a custodian at the University of Wisconsin-Platteville.[1] In early August 2022, he asked for accommodations for bone spurs in his feet. On August 2, he forwarded a note from his clinic restricting him from "sustained walking, sitting or standing for more than 15–20 minutes" until August 9. Dkt. 26-2.

The following day, Jessica Wright from human resources spoke to Sautter about his accommodation request. Sautter told Wright that his bone spurs were being aggravated by the recent implementation of the "team clean model." Neither side clearly explains what that model is, but the court's understanding is that, previously, custodians worked alone and were

---

[1] The parties did not submit proposed findings of fact about how long Sautter worked for the university. Sautter says in his declaration that he was hired in 2011, Dkt. 31, ¶ 2; one of the defendant's witnesses says that Sautter told her that he had been a custodian with the university for 22 years, Dkt. 26, ¶ 12.

responsible for cleaning one building; under the new model, custodians worked together and moved from building to building throughout the day. Sautter told Wright that normally he walked around 7,000 steps per day, but under the new model, he was walking double that. Sautter asked to be provided work that would allow him to alternate between sitting, standing, or walking every 20 minutes. In response, Wright told Sautter that he should consider requesting a long-term accommodation, and Wright described the process for doing so. Wright also provided Sautter with information about early retirement based on disability.

John Niehaus, the assistant director of facilities and Sautter's supervisor, understood Sautter's requested accommodation to be to limit his walking to 7,000 steps a day. This is consistent with what Sautter states in his declaration. Dkt. 31, ¶ 12. In an attempt to accommodate Sautter's restrictions, Niehaus assigned Sautter to preparing Sesquicentennial Hall for grand opening. This included a mix of both sitting and standing activities. After a few days, Sautter told Niehaus that he was still doing too much walking because the building was so large. (Neither side submitted evidence regarding the size of Sesquicentennial Hall as compared to the buildings that Sautter previously cleaned.) In response to Sautter's concerns, Neihaus and Wright told Sautter "to monitor his step count and to take additional breaks." Dkt. 36, ¶ 31. Wright also discussed the possibility of cutting back to half time, but Sautter said he did not want to do that.

Sautter took off work from August 8 to 12. When Sautter returned to work on August 15, he shared with Wright a note from his podiatrist, who wrote that Sautter "has been used to an active work schedule of around 7,000 steps," and he could not continue to walk 14,000 steps in light of his plantar fasciitis, calcaneal bursitis, and hallux limitus. Dkt. 26-4. The

3

podiatrist also wrote that Sautter will "need a scaled back version of his current position or a new position." *Id.*

Sautter filled out a "Request for Accommodation" form in which he asked for the following:

- Alternating work duties—sitting vs. standing/walking
- Breaks as needed
- Rides between buildings—limit # of steps
- Sitting work:
    - ride on scrubber
    - cleaning chairs
    - desks/drawers

Sautter continued working in Sesquicentennial Hall throughout the rest of August. Wright told Sautter that the hall was opening at the beginning of September, so a different accommodation would be needed then.

On August 23, Wright told Sautter about an open position for a delivery driver. Wright again raised the possibility of early retirement. Sautter said that he would not apply for the driver position because it would require too much walking and lifting.

Neihaus and Wright considered other work for Sautter that would require sitting primarily, such as driving the garbage truck, riding the lawn mower, or riding the floor scrubber. But those tasks represent only a small portion of a given position, so Neihaus and Wright did not believe that transferring Sautter to such a position would be "sustainable as a substitute for consistent, ongoing work." Dkt. 36, ¶ 16.

4

On August 26, Neihaus told Sautter that he was having difficulty finding work for Sautter after Sesquicentennial Hall opened.

In late August or early September, Sautter stopped working at the university. The parties dispute whether Sautter quit or was fired.

In late October, Wright received a letter from a lawyer who stated that he represented Sautter "in a potential legal action" against the university. Dkt. 26-10. The letter alleged that the university had failed to accommodate Sautter's disability and discriminated against him because of his disability. In response to the letter, counsel for the university "indicated [that the university was] open to exploring potential reinstatement of Sautter and resuming the interactive process to find reasonable accommodations, up to and including identifying other positions at UWP that Sautter might be eligible and qualified for." Dkt. 36, ¶ 68.

In February 2023, Sautter returned to work at the university as a full-time custodian. In a "Request for Accommodation," Sautter wrote that he had "[d]ifficulty walking/standing long periods of time, must have less tha[n] 7,000 steps per day." Dkt. 26-12. He asked for the following accommodation:

> Responsibilities will be only in Ottsman Hall—third floor . . . . Reduced duties and specific duties will be discussed and adjusted weekly as needed. Allow additional 10–15 minutes breaks per day to be taken when needed. Building duties will be shared with assigned Team for work that cannot be completed by Ricky (to be discuss[ed]/adjusted weekly as needed)

*Id.*

Wright approved the following accommodations:

> Reduced work duties assignment: 3rd floor + all bathrooms + (public spaces in lower level) (does not include subbasement) Meet weekly w/ Tony Isabell and Jessica Wright to review. Break + meals in Otts. Report steps at weekly meetings. Additional breaks + team clean support requested—approved.

5

*Id.*

Sautter alleges that the university did not consistently provide the accommodations it approved.

In November 2023, Sautter retired.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The court understands Sautter to be asserting three claims under the Rehabilitation Act: (1) the university failed to provide him with a reasonable accommodation for his bone spurs; (2) the university terminated him because of his disability; and (3) after he was rehired, the university placed unreasonable restrictions on him because of his disability or because he requested accommodations and threatened legal action against the university. The university moves for summary judgment on all of these claims.

The question on a motion for summary judgment is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

**A. Failure to accommodate**

A failure-to-accommodate claim under the Rehabilitation Act has four elements: (1) the plaintiff is disabled, meaning that he is substantially limited in performing one or more major life activities; (2) the defendant was aware of that disability; (3) the defendant failed to provide

6

a reasonable accommodation; and (4) the employment program of which the plaintiff's job was a part received federal financial assistance. *See* 29 U.S.C. § 794; *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021). For the purpose of its motion for summary judgment, the university does not dispute that Sautter is disabled as a result of his bone spurs, that the university was aware of that disability, or that the university receives federal financial assistance. The question is whether the university failed to provide a reasonable accommodation.

An accommodation is reasonable if it allows the employee to perform all the essential functions of his job and the benefits of the accommodation are proportional to costs. *See Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1068 (7th Cir. 2008); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995).[2] It is the plaintiff's burden to show that an accommodation is reasonable. *Vargas v. DeJoy*, 980 F.3d 1184, 1190 (7th Cir. 2020); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 547 (7th Cir. 2008).

Sautter contends that the university failed to reasonably accommodate his disability both before he stopped working for the university in September 2022 and after he returned in February 2023. A threshold problem with this claim is that Sautter does not clearly identify in his brief exactly what accommodations he believes the university should have provided him; his brief focuses more on arguments that the accommodations provided by the university were not effective, and the university failed to engage in an "interactive process" to identify a reasonable accommodation.

---

[2] The court relies on cases that were decided under both the Rehabilitation Act and the Americans with Disabilities Act because the relevant elements of the claims under both statutes are the same. *See Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 756 (7th Cir. 2006).

Sautter is correct that the employer is required to work with the employee to identify potential accommodations. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178–79 (7th Cir. 2013). But a failure to engage in the interactive process is not a claim in itself. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1061–62 (7th Cir. 2014). The plaintiff must show that any continuation of the interactive process would have identified a reasonable accommodation. *Id.* So the court need not decide whether the university could have done more to identify potential accommodations; the question now is whether Sautter has identified a reasonable accommodation that would have allowed him to perform the essential functions of his job.

A review of Sautter's brief and proposed findings of fact reveals two possible sets of accommodations that he believes he should have received. The first were the accommodations that the university agreed to provide when Sautter returned to work in February 2023: reduced duties to clean only a portion of one building with assistance from other custodians. The second was to be returned to the working conditions that existed before the university adopted the "team clean" model, so that Sautter did not have to walk more than 7,000 steps a day.[3]

As for the first set of accommodations, Sautter says reasonableness is shown by the university's agreement to provide those accommodations. This argument has surface appeal: how could it be unreasonable to require an employer to do what it agreed to do voluntarily? But that isn't the test. An employer does not create a legal duty by providing an

---

[3] Sautter asked the university for other accommodations, including additional breaks, receiving rides between buildings, and more sitting work. But Sautter does not contend that the university denied him permission to take additional breaks, and he says nothing in his brief or proposed findings of fact about whether providing him rides between buildings or more sitting work would have been reasonable. Again, it is Sautter's burden to show that an accommodation was reasonable, *see Vargas*, 980 F.3d at 1190, so he has forfeited those issues by failing to discuss them.

accommodation that doesn't otherwise meet the requirements for a reasonable accommodation. The court of appeals explained this in a case involving an employee who wanted to work full-time from home:

> [I]f the employer, because it is a government agency and therefore is not under intense competitive pressure to minimize its labor costs or maximize the value of its output, or for some other reason, bends over backwards to accommodate a disabled worker—goes further than the law requires—by allowing the worker to work at home, it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.

*Vande Zande*, 44 F.3d at 545.

As in *Van Zande*, the accommodations that the university promised in February 2023 went well beyond what the law requires. The university essentially created a unique, "reduced duties" position for Sautter and required other employees to complete tasks that Sautter could not finish. It is well-established that it is generally not reasonable under federal disability law to require an employer to create a light-duty position that would not otherwise exist or to require co-workers to help the plaintiff do the essential functions of the job.[4] There are exceptions to the general rules if the employer provides similar accommodations to all employees as a matter of policy, *Williams v. Board of Education of City of Chicago*, 982 F.3d 495, 506 (7th Cir. 2020), or if the tasks other employees have to perform are marginal, *Bilinsky v.*

---

[4] *See Vargas*, 980 F.3d at 1189–90 (employer not required create light-duty position for postal worker or to reassign his carrying tasks); *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482–83 (7th Cir. 2017) (employer not required to create light-duty position for manual laborer); *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289 (7th Cir. 2015) (requiring co-workers to perform doctor's supervisory duties was not reasonable); *Peters v. City of Mauston*, 311 F.3d 835, 840 (7th Cir. 2002) (requiring co-workers to help equipment operator with lifting was not reasonable); *Mays v. Principi*, 301 F.3d 866, 868 (7th Cir. 2002) (employer not required to create light-duty position for nurse or to assign a co-worker to help with lifting patients).

*American Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019). But in this case, Sautter was performing only a fraction of the work that others performed, and he cites no evidence either that he was qualified for any vacant light-duty positions or that the university had a policy of creating light-duty positions for employees. So the Rehabilitation Act did not require the university to provide in 2022 the accommodations it approved in 2023. And any failure by the university to keep its promise to provide the accommodations in 2023 was not a violation of the Rehabilitation Act.

The other potential accommodation suggested by the record would be to allow Sautter to go back to the way his job had been previously performed so that he would not have to walk more than 7,000 steps. But Sautter has not shown that such an accommodation would be effective or reasonable. As for whether the accommodation would be effective, Sautter alleges that he often had to walk more than 7,000 steps, even in 2023 when he was responsible for cleaning only one part of one building. Dkt. 31, ¶ 23. He does not identify any building assignment that would guarantee a daily step count of less than 7,000 steps.

Even if such an assignment had been possible, Sautter has not adduced evidence that it would be reasonable under the Rehabilitation Act. It is undisputed that the university restructured its custodial program in 2022 so that custodians would work in teams, a model the university adopted based on feedback from other institutions that the model was more efficient. Dkt. 36, ¶ 14. This meant that each custodian was required to work in multiple buildings each day, requiring more walking. The court of appeals has repeatedly held that employers are entitled to restructure jobs in a nondiscriminatory manner, so even if an employee was able to perform the job before the restructuring, this does not mean that the employee is entitled to keep performing the job the same way. *See Bourke v. Collins*, 142 F.4th

918, 923 (7th Cir. 2025); *Bilinsky*, 928 F.3d at 571; *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 680–81 (7th Cir. 2010).

*Gratzl* is instructive. The plaintiff was a court reporter who suffered from incontinence. She worked as a "court reporter specialist," meaning that she performed all her work from a control room, which allowed her to use the bathroom when necessary. 601 F.3d at 676–77. But the state eliminated the specialist position so that all reporters would have to work in the courtroom. *Id.* at 677. The court rejected the plaintiff's argument that the ADA required the employer to continue allowing her to work exclusively in the control room, concluding that "an employer is not required to maintain an existing position or structure that, for legitimate reasons, it no longer believes is appropriate." *Id.* at 680.

In this case, Sautter has adduced no evidence either the university is wrong about the increased efficiency of the team model or that making an exception for Sautter would not undermine that efficiency. As already discussed, it is Sautter's burden to show that he could be reasonably accommodated. Sautter has not identified any reasonable accommodation that the university could have provided for him, so this claim fails.

B. Termination

Sautter contends that the university terminated him in 2022 because of his disability. The university denies this, contending that Sautter voluntarily resigned. But the court need not decide whether the dispute is genuine because it is not material. A plaintiff bringing a discrimination claim under the Rehabilitation Act must show that he is "qualified" in the sense that he can "perform the essential functions of the job, without or without a reasonable accommodation." *Conners*, 984 F.3d at 1261. As discussed in the previous section, Sautter has

not identified a reasonable accommodation that would have allowed him to perform his job, so this claim fails for the same reasons as Sautter's failure-to-accommodate claim.

## C. Restrictions imposed after re-hire

Sautter alleges that, after he returned to work in 2023, the university retaliated against him. His evidence of this consists of three paragraphs in his declaration:

> 24. [T]he University imposed retaliatory actions against me. These included restrictions on where I could spend my lunch breaks, limitations on whom I could speak with at work, and prohibitions on discussing certain topics related to my condition and treatment.
>
> 25. These restrictions were not imposed on other custodians or similarly situated employees who did not have my disability or work restrictions. I was singled out and treated differently because of my medical condition and need for accommodations.
>
> 26. The restrictions and retaliatory actions were enforced by both my supervisors and the University's human resources personnel. Because these individuals were responsible for handling internal complaints, I felt that I had no safe or effective outlet to report my treatment or seek redress within the University.

Dkt. 31.

It is not clear whether Sautter is asserting that the university retaliated against him for exercising his rights under the Rehabilitation Act, that the university discriminated against him because of his disability, or both. Regardless, Sautter has not raised a genuine issue of material fact on this claim.

To begin with, Sautter must show that he suffered from an adverse action to support a discrimination or retaliation claim under the Rehabilitation Act. *See Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018) (retaliation); *Whitaker v. Wis. Dept. of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017) (discrimination). But Sautter's allegations are too vague to allow a reasonable jury to find in his favor on that element. Sautter does not identify the "restrictions"

12

placed on where he could eat lunch or the "limitations" and "prohibitions" on his speech, so it is impossible to determine whether Sautter suffered an adverse action.[5] "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough" to create a genuine issue of material fact. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (internal quotation marks and alterations omitted).

Even assuming that the university subjected Sautter to an adverse action, he must also adduce evidence that the university took that action because of his disability or because he exercised his rights under the Rehabilitation Act. *See Guzman*, 884 F.3d at 642; *Whitaker*, 849 F.3d at 684. Sautter's only evidence of a causal connection is his allegation that the "restrictions were not imposed on other custodians or similarly situated employees." Dkt. 31. But, again, that allegation is too vague to create a genuine issue of material fact. Sautter does not provide any foundation for how he knows what rules other employees were subjected to, and he neither identifies any similarly situated employees nor explains why he believes that the other employees were similarly situated to him.

The bottom line is that Sautter has not adduced evidence that he was subjected to an adverse action under the Rehabilitation Act in 2023 or that the university took an adverse action against him in 2023 because of his disability or because he exercised his rights under

---

[5] The document approving Sautter's accommodations includes the phrase "meals in Otts." Dkt. 26-12. Ottsman Hall is the building that Sautter was required to clean in 2023, so the phrase may mean that Sautter was required to eat his meals in Ottsman Hall. If that is correct, that requirement would appear to be related to Sautter's request to keep his daily step count below 7,000: eating in the same building he cleans would help to limit his steps. Sautter does not explain why that would be an unreasonable accommodation. Regardless, neither side explains what "meals in Otts" means or why the requirement was included, so that issue is forfeited.

the Rehabilitation Act. So the court will grant summary judgment to the university on this claim.

ORDER

IT IS ORDERED that the motion for summary judgment filed by the Board of Regents of the University of Wisconsin System, Dkt. 24, is GRANTED. The clerk of court is directed to enter judgment and close this case.

Entered December 19, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge